IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DORIS TYLER, individually and on behalf of all other persons similarly situated, )<br>)<br>)<br>) | |
| Plaintiff, ) | No. 2:15-cv-02084-JPM-cgc |
| v. ) | Jury Demanded |
| TACO BELL CORP., and TACO BELL OF AMERICA, LLC, )<br>)<br>) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION FOR ADDITIONAL DISCOVERY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)**

Before the Court is Defendants' Motion for Summary Judgment, filed October 19, 2015. (ECF No. 50.) Plaintiff responded in opposition on November 16, 2015. (ECF No. 59.) Defendants filed a reply on November 30, 2015. (ECF No. 61.) On December 15, 2015, Plaintiff filed a Notice of Supplemental Authority in Opposition to Defendants' Motion. (ECF No. 67.) The Court held a hearing on the Motion for Summary Judgment on December 23, 2015. (ECF No. 69.)

Also before the Court is Plaintiff's Motion for Additional Discovery Pursuant to Federal Rule of Civil Procedure 56(d), filed November 16, 2015. (ECF No. 60.) Defendants responded in opposition on November 30, 2015. (ECF No. 62.) Plaintiff filed a reply on December 14, 2015. (ECF No. 66.)

For the following reasons, the Court DENIES Defendants'
Motion for Summary Judgment and, therefore, DENIES AS MOOT
Plaintiff's Motion for Additional Discovery.

I.   **BACKGROUND**

A.   **Factual Background**

This case involves allegations that Defendants
misclassified Assistant General Managers as "exempt" under the
Fair Labor Standards Act ("FLSA") and did not pay them overtime
compensation. (See Compl., ECF No. 1.) Taco Bell[1] employed
Plaintiff Doris Tyler as an Assistant General Manager ("AGM") at
its restaurant in West Memphis, Arkansas, and then at its
restaurant on Elvis Presley Boulevard in Memphis, Tennessee
during the period between September 18, 2012, and December 24,
2014.[2] (Tyler Dep. 21:5-24:22, ECF No. 42-10;[3] Statement of
Undisputed Facts ("SUF") ¶ 2, ECF No. 50-2; Resp. to SUF ¶ 2,
ECF No. 59-1.) The parties differ in their perception of
Tyler's role as AGM.

---

[1] Defendants assert that Taco Bell of America, LLC, employed Tyler (SUF
¶ 1), but Plaintiff denies "that Taco Bell of America, LLC and Taco Bell
Corp. were not joint employers." (Resp. to SUF ¶ 1.) Because this issue
does not affect the Court's determination on summary judgment, the Court
refers to both entities together as "Taco Bell" for the sake of simplicity.

[2] Tyler has released her FLSA claims that arose prior to November 13,
2013 (see Am. Compl. ¶ 10 n.2, ECF No. 25), but requests conditional
certification of a class beginning September 18, 2012, three years prior to
the filing of the Motion for Conditional Certification (see ECF No. 42 at 2-
3).

[3] Defendants and Tyler each submit excerpts of Tyler's deposition
transcript in connection with their summary judgment memorandum. (See ECF
Nos. 50-3, 59-2 to 59-4.) For convenience, the Court refers to the complete
transcript of Tyler's deposition, submitted at ECF No. 42-10.

According to Taco Bell, "Tyler's primary duties included coaching, developing, and training employees to perform their duties well and provide excellent customer service." (SUF ¶ 8; see also Foust Dep. 166:1-169:10, ECF No. 50-5; Jackson Decl. ¶ 3, ECF No. 50-4.) Tyler was a member of the management team and was responsible for the restaurant when there was no Restaurant General Manager ("RGM"). (SUF ¶¶ 8, 11; see also Jackson Decl. ¶¶ 3, 17, 18.) Taco Bell expected Tyler to manage the store's budget (SUF ¶ 17 (citing Tyler Dep. 210:11-15, 225:20-227:18, 237:4-238:14)), coach staff on speed of service (SUF ¶ 10 (citing Jackson Decl. ¶¶ 11-12; Tyler Dep. Ex. 24, ECF No. 50-3 at PageID 1625-39); SUF ¶ 27 (citing Tyler Dep: 227:19-228:3)), perform "manager-in-charge" walks (SUF ¶ 12 (citing Tyler Dep. 219:5-24; Foust Dep. 116:1-21)), monitor labor (SUF ¶ 21 (citing Tyler Dep. Exs. 24, 25, 27, 28, ECF No. 50-3 at PageID 1625-47, 1649-56)), and ensure that the restaurant had the correct amount of product (SUF ¶ 22 (citing Tyler Dep. 69:9-70:12, 219:25-220:3, 224:11-25, 226:17-227:9, 280:14-20; Foust Dep. 166:1-169:10)). Taco Bell further contends that Tyler "routinely disciplined employees" as an AGM. (SUF ¶ 83 (citing Tyler Dep. Ex. 31, ECF No. 50-3 at PageID 1658-1718).) According to Taco Bell, Tyler managed and directed the work of two to seven employees each day. (SUF ¶ 96 (citing Tyler Dep. 189:2-20).)

Additionally, Taco Bell asserts, and Tyler agrees, that Tyler interviewed applicants and recommended whether they should be hired. (SUF ¶ 108 (citing Tyler Dep. 191:4-24, 267:4-18, 268:1-25); Resp. to SUF ¶ 108.) The parties disagree, however, as to the weight given to Tyler's feedback on applicants. (SUF ¶¶ 109, 110; Resp. to SUF ¶¶ 109, 110.) The parties also disagree as to whether Tyler hired any employees. (SUF ¶¶ 111-14; Resp. to SUF ¶¶ 111-14.) Taco Bell also asserts that Tyler recommended employees for termination and that Taco Bell terminated those employees. (SUF ¶ 117 (citing Jackson Decl. ¶ 16).)

On the other hand, according to Tyler, her primary duties were manual tasks, such as cleaning, cashiering, and taking out the trash. (Tyler Dep. 273:3-274:4; Resp. to SUF ¶¶ 7, 8.) She asserts that she regularly "performed hourly work because she was told to, and because there were not enough hourly workers to get the work done." (Resp. to SUF ¶ 13 (citing Tyler Dep. 286-87).) She contends that she was a member of the management team in name only and did not have any actual authority to make material decisions. (Tyler Dep. 125:21-26:20, 220:7-13, 221:19-222:1, 276:11-18; Resp. to SUF ¶¶ 8, 11, 28, 66-68.) While Tyler agrees that she was "supposed to be" responsible for the store's budget, coach staff on speed of service, perform "manager-in-charge" walks, monitor labor, and ensure that the

restaurant had the correct amount of product on paper, she explains that she struggled with these responsibilities due to her manual tasks. (Resp. to SUF ¶¶ 10, 12, 13, 15, 17, 21, 22, 27, 79, 85; Tyler Dep. 125-26, 275, 276, 277, 287, Ex. 24.)

Tyler concedes that she completed paperwork for new hires and ordered product, uniforms, and supplies, but maintains that she did so only when she was instructed. (Resp. to SUF ¶¶ 29, 32, 37, 38.) To the extent that Tyler had authority to perform other "managerial" actions, Tyler asserts that non-exempt shift-leads also had the same authority. (Resp. to SUF ¶¶ 34, 36, 40, 43, 56.) Additionally, Tyler asserts that although she would "sometimes" issue corrective actions, they were merely documents that would go into the file and no other consequences would result. (Tyler Dep. 195, 281; Resp. to SUF ¶¶ 83, 84, 103.) Tyler's employment evaluations reflect that Tyler was often rated "below target" in many management areas (see Tyler Dep. Ex. 24; SUF ¶ 88), but Tyler asserts that these evaluations demonstrate her inability to perform various functions "given her manual task load" (Resp. to SUF ¶ 87; see also Tyler Dep. 288). Tyler also refutes Taco Bell's contention that she managed two to seven employees on any given day. (Resp. to SUF ¶ 96 (citing Tyler Dep. 189).) As mentioned above, Tyler denies having any authority to hire or fire employees and does not believe her recommendations were given much weight. (Resp. to

5

SUF ¶¶ 111-18.)  Tyler maintains that she needed "verification"
from the RGM to make any decisions about the restaurant.  (Resp.
to SUF ¶ 138 (citing Tyler Dep. 276, 288).)

**B.  Procedural Background**

Plaintiff filed her Complaint on February 4, 2015.  (See
Compl., ECF No. 1.)  On March 31, 2015, Defendants filed a
Motion to Dismiss.  (ECF No. 14.)  The Court held a hearing on
the Motion to Dismiss on May 4, 2015, and granted Plaintiff
leave to amend her Complaint.  (Min. Entry, ECF No. 22.)
Plaintiff filed an Amended Complaint on May 15, 2015.  (ECF No.
25.)  The Court denied as moot the Motion to Dismiss on May 20,
2015.  (ECF No. 26.)  Defendants filed separate Answers to the
Amended Complaint on May 29, 2015.  (ECF Nos. 27, 28.)

On September 18, 2015, Plaintiff moved for conditional
class certification.  (ECF No. 41.)  Defendants responded in
opposition on October 19, 2015.  (ECF No. 52.)  Plaintiff filed
a reply brief on November 2, 2015.  (ECF No. 57.)  Defendants
filed a Notice of Supplemental Authority on December 28, 2015.
(ECF No. 70.)  This motion is still pending before the Court.

On October 19, 2015, Defendants filed a Motion for Summary
Judgment.  (ECF No. 50.)  Plaintiff responded in opposition on
November 16, 2015.  (ECF No. 59.)  Defendants filed a reply
brief on November 30, 2015.  (ECF No. 61.)  On December 15,

2015, Plaintiff filed a Notice of Supplemental Authority. (ECF No. 67.)

Plaintiff also filed a Motion for Discovery Pursuant to Federal Rule of Civil Procedure 56(d) on November 16, 2015, seeking a denial of Defendants' Motion for Summary Judgment to permit Plaintiff to obtain additional discovery. (ECF No. 60.) On November 30, 2015, Defendants filed a Response in Opposition. (ECF No. 62.) Plaintiff filed a reply brief on December 14, 2015. (ECF No. 66.) The Court held a hearing on the pending motions on December 23, 2015. (Min. Entry, ECF No. 69.)

## II. LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial

burden of demonstrating the absence of any genuine issue of material fact." <u>Mosholder v. Barnhardt</u>, 679 F.3d 443, 448 (6th Cir. 2012) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." <u>Mosholder</u>, 679 F.3d at 448-49; <u>see also</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." <u>Martinez v. Cracker Barrel Old Country Store, Inc.</u>, 703 F.3d 911, 914 (6th Cir. 2013) (quoting <u>Chapman v. UAW Local 1005</u>, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); <u>see also</u> <u>Kalich v. AT & T Mobility, LLC</u>, 679 F.3d 464, 469 (6th Cir. 2012).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[] to particular parts of materials in the record' or 'show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" <u>Bruederle</u>, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); <u>see also</u> <u>Mosholder</u>, 679 F.3d at 448 ("To support its motion, the moving

party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex Corp., 477 U.S. at 325)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogated on other grounds by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).  "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Johnson v. Memphis Light Gas & Water Div., 777

F.3d 838, 843 (6th Cir. 2015) (quoting Anderson, 477 U.S. at
251–52). "[A] mere 'scintilla' of evidence in support of the
non-moving party's position is insufficient to defeat summary
judgment; rather, the non-moving party must present evidence
upon which a reasonable jury could find in her favor." Tingle
v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012)
(quoting Anderson, 477 U.S. at 251).

## III. ANALYSIS

Defendants argue that they are entitled to summary judgment
because Tyler's primary responsibilities were "executive" and
Tyler was properly classified as exempt. (ECF No. 50-1 at 3-
20.) Defendants assert that, as an AGM, Tyler was expected to
manage the restaurant and supervise team members. (Id. at 16.)
Defendants further argue that Plaintiff's failure to perform
managerial duties does not transform her into a non-exempt
employee. (ECF No. 61 at 2, 8-9.) Additionally, Defendants
maintain that any factual dispute arises from Plaintiff's self-
contradicting testimony and is insufficient to establish a
genuine dispute of material fact. (Id. at 3-7.)

Plaintiff argues that summary judgment is not appropriate
because there is a factual dispute as to how she spent her time
during her employment as an AGM. (ECF No. 59 at 8-20.)
Specifically, Plaintiff asserts that she spent ninety percent of
her time on manual, non-managerial tasks, that she did not have

the authority to perform many managerial tasks, and that her few managerial duties were insignificant. (Id. at 2-17.) Additionally, Plaintiff contends that she did not regularly direct the work of two or more employees and that she did not have the authority to hire or fire employees, as is required for exempt status. (Id. at 17-19.)

The Fair Labor Standards Act ("FLSA") requires employers to pay covered, non-exempt employees time-and-a-half for all hours worked over forty in a week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts employers from this requirement with respect to individuals "employed in a bona fide executive, administrative, or professional capacity." Id. § 213(a)(1). At issue in the instant matter is whether Tyler was employed in an "executive capacity," which refers to any employee:

> (1) Compensated on a salary basis at a rate not less than $455 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire . . . or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). "This exemption is to be narrowly construed against the employers seeking to assert [it], and the

employer bears not only the burden of proof, but also the burden on each element of the claimed exemption." Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 399-400 (6th Cir. 2004) (alteration in original) (citations and internal quotation marks omitted).

The parties agree that Tyler received an annual salary of $39,000, or $750 per week, which satisfies the $455 per week requirement. (ECF No. 50-1 at 3; ECF No. 59 at 9 n.2; see also SUF ¶ 5; Resp. to SUF ¶ 5.) The remaining three elements of executive capacity are contested.

## A. Primary Duty

Taco Bell asserts that Tyler's

primary AGM responsibilities and duties . . . included coaching, developing, and training employees to perform their duties well and provide excellent customer service. As an AGM, Tyler was a member of the management team and expected to lead and supervise employees at all times. Taco Bell also expected Tyler to "role model" proper performance of tasks per company standards. Taco Bell directed and expected Tyler, as an AGM, to assess the customer experience, quality of food, food preparation, and performance of employees working the shift and take corrective action when necessary.

(ECF No. 50-1 at 4 (footnotes omitted); SUF ¶¶ 6-16.) Taco Bell further asserts that Tyler made specific admissions in her deposition as to her management responsibilities. (See ECF No. 50-1 at 4-8.) Specifically, Taco Bell contends that Tyler admits that she was in charge of shifts (SUF ¶ 63 (citing Tyler

Dep. 293:11-294:10)), that she disciplined employees (SUF ¶ 81, 83-84 (citing Tyler Dep. 195:5-19, 210:6-10, 215:4-12, 216:20-217:16, 244:12-245:8, 249:6-251:2, Exs. 29, 31, ECF No. 50-3 at PageID 1657-1718)), and that Taco Bell expected her to perform and evaluated her on management duties (SUF ¶¶ 85-87 (citing Tyler Dep. 228:25-230:17, 240:23-242:17, 288:14-294:10, Exs. 24-28)).  Taco Bell also points out that Tyler earned significantly more than hourly, non-exempt employees.  (ECF No. 50-1 at 11-12.)

Tyler argues that she spent "roughly 90%" of her workday "on the same manual, non-managerial [tasks] performed by hourly employees."  (ECF No. 59 at 2 (citing Tyler Dep. 273).) Specifically, Tyler asserts that she prepared food, set up the food service line, cleaned, served customers, took out the trash, stocked, and ran the cash register.  (Id. (citing Tyler Dep. 33-34, 179, 272).)  She maintains that she performed these tasks because there were not enough hourly employees.  (Id. at 3 (citing Tyler Dep. 287-89); see also Tyler Dep 286:10-287:5.) According to Tyler, as a result, she was unable to perform the managerial tasks described in Taco Bell's AGM position description.  (ECF No. 59 at 3-4 (citing Tyler Dep. 275-76, 286, 288); id. at 12 (citing Tyler Dep. 287-89).)  Tyler further asserts that she was a manager only "on paper," even when the

RGM was not present and she was the highest ranking manager in the restaurant. (Id. at 5 (quoting Tyler Dep. 125-26).)

Management is considered to be an employee's primary duty if it is "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Id. Although "[t]ime alone . . . is not the sole test," "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id. § 541.700(b). In the case of assistant managers, "management [may be] their primary duty even if [they] spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised . . . , the assistant managers generally would not satisfy the primary duty requirement." Id. § 541.700(c).

> The term "management" includes activities such as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and

efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise or supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

Id. § 541.102.

Despite Defendants' contentions, Tyler's testimony that she performed certain managerial tasks is not necessarily inconsistent with her testimony that she spent approximately ninety percent of her time on manual, non-managerial tasks.[4] Tyler testified that she spent approximately five to ten percent of her time performing managerial tasks, and ninety to ninety-five percent of her time performing manual tasks. (Tyler Dep. 177:16-20, 265:4-24, 273:20-25; 294:11-295:13.) Tyler's testimony as to the tasks that accounted for a significant majority of her time directly contradicts Taco Bell's

_____

[4] The Court further notes that inconsistencies within a deposition are not the same as a "sham affidavit." See Barnes v. Otis Elevator Co., 2 F. App'x 461, 465 (6th Cir. 2001) (declining to consider plaintiff's post-deposition affidavit because "a party may not create an issue of fact by submitting an affidavit that contradicts her prior deposition testimony," but considering plaintiff's deposition testimony despite inconsistencies). While Defendants may be able to proffer certain "sound bites" from Tyler's deposition to support their contentions that she had managerial responsibilities, Tyler's testimony, viewed as a whole, reveals Tyler's belief that she primarily performed manual tasks and perhaps that she had some confusion as to or difficulty articulating the extent of her individual authority. Thus, Tyler's testimony, juxtaposed with Taco Bell's position description, Foust's testimony, and Jackson's affidavit, creates a genuine dispute of material fact.

description of the AGM position (see Tyler Dep. Ex. 19, ECF No. 50-3 at PageID 1612; Foust Dep. Ex. 41, ECF No. 50-5 at PageID 1741) and the testimony of Virginia Foust, a National Business Leader in Taco Bell's Human Resources Department, regarding the expectations for an AGM (see Foust Dep. 116:6-21, 166:1-169:10, ECF No. 50-5).  Additionally, Tyler's testimony that she did not have authority to perform many managerial tasks (Tyler Dep. 274:5-276:18, 277:23-25, 281:2-7) directly contradicts Foust's testimony and Jackson's statements regarding the authority of an AGM (Foust Dep. 116:1-21; Jackson Decl. ¶¶ 3-4, 8-9, 16, 20).

Moreover, the Court cannot determine the relative importance of Tyler's supervisory duties as compared with her other duties.  The court in Marzuq v. Cadete Enterprises, Inc., No. 14-1744 (1st Cir.), noted that "[i]f, contrary to their job descriptions, managers could not prioritize their supervisory duties because 'quality Customer Service' demanded that they regularly perform tasks ordinarily assigned to hourly employees, a factfinder could reasonably conclude that plaintiffs' exempt and nonexempt duties were equally important to the successful operation of their restaurants."  (Not. of Supp. Authority at 21, ECF No. 67-1.)  In the instant case, Tyler and Taco Bell disagree as to why Tyler spent such a significant portion of her time on nonexempt tasks and as to the relative importance of her contributions stemming from these tasks.  Thus, whether the

"relative importance of duties" factor favors exemption "cannot be determined without a factfinder's judgment on the impact of the plaintiffs' varied undertakings." (Id.)

Finally, Taco Bell submits evidence to show that Tyler earned significantly more than the two hourly, non-exempt employees she apparently hired. (Nichols Decl. Exs. 1, 2, ECF No. 50-6 at PageID 1746-47.) Taco Bell submits no evidence, however, as to the benefit packages or bonuses of these individuals. Additionally, the wages of newly hired employees are unhelpful comparators to the salary of Tyler, who was employed by Taco Bell for approximately ten years. (See Am. Compl. ¶ 10; Taco Bell of Am., LLC Answer ¶ 10, ECF No. 28.) Thus, the Court has insufficient information to determine whether this factor weighs against or in favor of a finding that Tyler's primary duty was management. For this reason, and because there are genuine factual disputes as to the other factors, the Court finds that summary judgment is not appropriate. Whether Tyler's primary duties involved managerial or manual tasks is a question best resolved by a jury.

Defendants argue that "Tyler cannot unilaterally convert herself from exempt to non-exempt by failing to perform expected managerial duties." (ECF No. 50-1 at 18.) While Defendants' assertion is correct, there remains a factual dispute as to why Tyler was allegedly not performing the managerial tasks set out

17

in the AGM position description.  Although Tyler's employment reviews indicate that Tyler's failure to perform managerial tasks was due to poor performance (Tyler Dep. Exs. 24-28, ECF No. 50-3 at PageID 1625-1656), Tyler testified that she was unable to perform managerial work because Taco Bell failed to employ enough hourly employees and Tyler was occupied with the manual tasks typically performed by hourly employees (Tyler Dep. 286:16-287:5).  At the summary judgment stage, the Court must view the evidence in the light most favorable to the non-moving party and does not make credibility determinations.  See Robertson, 753 F.3d at 614; Martinez, 703 F.3d at 914. Accordingly, summary judgment is not appropriate in this instance.

## B.  Directing the Work of Two or More Employees

Taco Bell argues that Tyler admits that she managed two to seven employees on any given day and "could direct" those employees to perform tasks.  (ECF No. 50-1 at 12; SUF ¶¶ 96-107 (citing Tyler Dep. 180:1-4, 189:2-20, 283:23-284:3, Ex. 24; Foust Dep. 166:1-169:10).)

Tyler argues that, "[t]o the extent Ms. Tyler offered any direction whatsoever, a reasonable jury could find that she did not offer such direction 'customarily and regularly,' as the executive exemption requires."  (ECF No. 59 at 17-18.)

18

The executive exemption applies only where an "employee customarily and regularly directs the work of two or more employees."  29 C.F.R. § 541.100.  "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which . . . may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."  Id. § 541.701.

Tyler testified that "[d]epending" and "[n]ot all the time" she "managed the other team members" and "told them what to do." (Tyler Dep. 189:2-21.)  She further testified that she "could direct them . . . if [she] had them, enough of them."  (Tyler Dep. 180:1-4.)  She did not, however, testify as to the frequency of this responsibility or the extent to which she "directed" the work of these employees.  Accordingly, viewing the evidence in the light most favorable to Tyler, the Court finds that a genuine dispute of material fact exists as to whether Tyler "customarily and regularly" directed the work of two or more employees.

### C.   Authority to Hire or Fire or Provide Suggestions Given Particular Weight

Taco Bell argues that Tyler admits that she interviewed applicants and recommended whether applicants should be hired. (ECF No. 50-1 at 13-15.)  Specifically, Taco Bell points out

that Tyler hired at least two employees in 2014, one of whom Tyler hired without the approval of the area coach. (Id. at 13; SUF ¶¶ 110-14 (citing Jackson Decl. ¶¶ 4, 5, 10; Nichols Decl. Exs. 1, 2; Tyler Dep. 267:4-18, 267:23-269:25).) Additionally, Taco Bell asserts that Tyler recommended employees for termination and Taco Bell terminated those employees. (ECF No. 50-1 at 14; SUF ¶ 117 (citing Jackson Decl. ¶ 16).)

Tyler argues that, during her entire time as an AGM, she interviewed only two candidates, recommended only one be hired, was never asked for her input on promotions or pay raises, and on the one occasion Tyler recommended that an employee be given "a recognition card," her recommendation was not followed. (ECF No. 59 at 6 (citing Tyler Dep. 66, 191-92, 217-18).) Tyler further asserts that "[i]t is undisputed that [she] could not fire as an AGM." (Id. at 18 (citing Tyler Dep. 281).)

The Court finds that there is a genuine dispute of material fact as to whether Tyler had the authority to hire and fire employees or make recommendations that were given any weight. Tyler testified that she did not have the authority to hire or fire individuals without approval from the RGM. (Tyler Dep. 191:7-14, 281:2-7.) Tyler further testified that she recommended hiring someone once, but that her recommendations as to hiring and firing were given little weight. (Id. 191:21-192:15, 267:4-269:25.) On the other hand, Defendants submitted

an affidavit from Daryel Jackson, an area coach who supervised Tyler, asserting that Tyler interviewed numerous applicants and her recommendations as to whether they should be hired were given "considerable weight." (Jackson Decl. ¶ 5.) Defendants also submitted evidence that Tyler recommended the termination of employees and that her recommendations were given "considerable weight." (Id. ¶ 16.) Although Taco Bell points to evidence that Tyler would threaten employees who violated company policy with termination (see Tyler Dep. Exs. 29, 31, ECF No. 50-3 at PageID 1657-1718), there is no evidence that Tyler had authority to terminate these employees or that Taco Bell ultimately terminated any of these employees upon Tyler's recommendation. Thus, this issue involves significant factual disputes as to whether Tyler had authority to make employment decisions and whether Taco Bell gave weight to Tyler's recommendations. Accordingly, summary judgment is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is DENIED. Because Defendants' Motion for Summary Judgment is denied on the merits, Plaintiff's Motion for Additional Discovery Pursuant to Federal Rule of Civil Procedure 56(d) is DENIED AS MOOT.

**IT IS SO ORDERED,** this 8th day of March, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE