UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

---

**DORIS TYLER, et al.,**

    **Plaintiff,**

v.                                            Case No. 15-02084-JPM-cgc

**TACO BELL CORP. and
TACO BELL OF AMERICA, LLC,**

    **Defendants.**

---

### JOINT MOTION AND MEMORANDUM
### FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

---

Named Plaintiff Doris Tyler ("Tyler") on behalf of herself, and all Opt-Ins (collectively "Plaintiffs"), and Taco Bell of America, LLC, and Taco Bell Corp. (collectively "Taco Bell"), have professionally settled the claims of the collective action class conditionally-certified under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA"). The settlement occurred only after: (i) the parties litigated this action through conditional certification, a motion for revision of the order granting in part and denying in part the motion for conditional certification, and summary judgment on the merits of Tyler's claim; (ii) expiration of the deadline for persons within the conditionally certified class to file consents to join; (iii) the exchange of significant discovery of all aspects of the case and exchange of information on the wages, salaries, and weeks of employment of each person who filed a consent to join; and (iv) substantial arms-length settlement negotiations between experienced counsel. The settlement will provide monetary compensation to all Plaintiffs and eliminate the risks both sides would bear if this litigation continued. The parties believe the settlement, memorialized in the Collective Action Settlement Agreement

("Settlement Agreement") attached hereto as Exhibit 1, is fair and reasonable.  Accordingly, the parties respectfully request the Court's approval of this FLSA settlement.

I.	**FACTS AND PROCEDURAL HISTORY**

Named Plaintiff Tyler is a former Assistant General Managers ("AGM") for Taco Bell in Memphis, Tennessee, and West Memphis, Arkansas.  On February 4, 2015, she filed this FLSA lawsuit against Taco Bell.[1]  She claims that Taco Bell misclassified her and other AGMs as exempt from overtime and failed to properly compensate her and other AGMs for all hours worked over 40 in a workweek.  Tyler also sought certification of her claims as a nationwide collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and other current and former employees who worked for Taco Bell as AGMs at company-owned restaurants (except those in the State of California) at any time from February 4, 2012, until December 24, 2014.  The Parties, thereafter, engaged in significant discovery and case evaluation relating to Plaintiffs' claims and class certification issues, including depositions and written discovery directed to Tyler and representatives of Taco Bell.  Declaration of Seth Lesser ("Lesser Dec.") ¶ 7.

On September 18, 2015, Tyler filed a Motion for Notice and Conditional Certification (Dkt. No. 41) seeking conditional certification of a nationwide collective action of all persons employed by Taco Bell as an AGM at company-owned restaurants (except those in the State of California) at any time from February 4, 2012, until December 24, 2014.

On October 19, 2015, Taco Bell filed a motion for summary judgment.  (Dkt. No. 50.)  The Court denied that motion on March 8, 2014.  (Dkt. No. 74.)

On May 3, 2016, the Court granted in part and denied in part the Motion for Notice and

---

[1] The original Complaint also named Taco Bell of America, Inc., as a defendant. (Dkt. No. 1.) On May 5, 2015, Tyler filed an Amended Complaint that dropped Taco Bell of America, Inc., as a defendant. (Dkt. No. 25).

Conditional Certification (Dkt. No. 81) and conditionally certified a collective action of all persons employed by Taco Bell as an AGM at any time from February 4, 2012, until December 24, 2014, at restaurant numbers 17477 and 1618.  On May 17, 2016, Tyler filed a Motion for Revision of Interlocutory Order seeking revision of the Court's order and certification of a nationwide class.  (Dkt. No. 86.)  The Court denied that motion on June 3, 2016.  (Dkt. No. 89.)

Pursuant to the Court's subsequently entered Order Approving Collective Action Notice, the deadline for filing consents to join expired September 12, 2016.  (Dkt. No. 91.)  Three (3) persons (in addition to Tyler) filed consents to join the lawsuit – Sara Smith, LaShanda Davis, and Sharon Miles.

After exchanging several settlement demands and offers, and after extended discussion of the claims, the parties arrived at an agreement to settle the claims in the lawsuit, which, as noted below, involves numerous vigorously contested legal and factual issues.  Lesser Dec. ¶ 16.

## II.     SETTLEMENT TERMS

The Settlement Agreement provides that, for settlement purposes only, Taco Bell will not challenge, disturb, or otherwise seek modification or decertification of the collective action conditionally certified by this Court's Order dated May 5, 2016 (Doc. No. 81), consisting of Plaintiff and the three opt-in plaintiffs who have filed written consents to join ("Settlement Class Members").

While maintaining its general denial of Plaintiffs' claims, Taco Bell agrees to pay a Total Settlement Amount of One Hundred Ten Thousand Dollars ($110,000.00).  Due to the small size of the class, Plaintiffs' Counsel has obtained signed approval of the Settlement Agreement from each Settlement Class Member.  Each Settlement Class Member has signed a statement certifying that he or she has read and understood the Agreement, has been apprised of the amount he or she will receive under the Agreement if approved by the Court, and that he or she voluntarily joins in

3

and approves the Settlement. Accordingly, there will be no costs or expenses for notice or a settlement administrator. Individual settlement amounts to each Settlement Class member, determined by the number of weeks worked within the conditionally certified class period, are as follows:

**SETTLEMENT ALLOCATION**

| Tyler | $15,263.16 |
|---|---|
| Smith | $4,210.52 |
| Davis | $15,263.16 |
| Miles | $5,263.16 |

Lesser Dec. ¶ 17. Per the Settlement Agreement, individual Settlement Amounts will be allocated 50% to back wages, subject to required withholdings and taxes, and 50% to liquidated damages. Plaintiffs' Counsel are requesting an award of $70,000 for reasonable fees and expenses as set forth in the Lesser Declaration at ¶ 20. That amount is well less than Plaintiffs' counsel total lodestar incurred in the litigation. *Id.*

In exchange, each Settlement Class Member has agreed to release and dismiss her FLSA claims against Taco Bell for any occurrence predating the Effective Date of the Settlement Agreement.

### III.   ARGUMENT AND AUTHORITIES

#### A.   Applicable Legal Standard

Courts have "frequently emphasized the non-waivable nature of an individual employee's right to minimum wage and to overtime pay under the" FLSA. *Barretine v. Ark-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). While the Sixth Circuit has not ruled directly upon the issue, district courts within this circuit, including this Court, hold "[a]s a general rule, employees' claims under the FLSA are non-waivable and may not be settled without supervision of either the

Secretary of Labor or a district court." *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) (citing *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *accord Nutting v. Unilever Manufacturing (U.S.) Inc.*, No. 2:14-cv-02239-JPM-tmp, at *5 (W.D. Tenn. June 13, 2014) (quoting *Gentrup*); *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 869 (S.D. Ohio 2011) (same). *But see Martin v. Spring Break' 83 Productions, L.L.C.*, 688 F.3d 247 (5th Cir.), *cert. denied*, 133 S. Ct. 795, 184 L. Ed. 2d 583 (2012) (parties may privately settle and release FLSA wage claims if such claims are the subject of a "bona fide dispute" regarding the hours worked or compensation due).

In reviewing a proposed FLSA settlement, "a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-CV-400, 2012 WL 6707008, at * 1 (E.D. Tenn. Dec. 26, 2012) (quoting *Lynn's Food Stores*, 679 F.2d at 1355); *see also Nutting*, No. 2:14-cv-02239-JPM-tmp, at *6 (quoting *Bartlow*). In determining whether a proposed FLSA settlement is fair and reasonable, this Court considers:

(1) the existence of fraud or collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits;
(5) the range of possible recovery; and
(6) the opinion of the counsel.

*Nutting*, No. 2:14-cv-02239-JPM-tmp, at **6-7 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

### B. The Settlement Is A Fair And Reasonable Resolution Of A Bona Fide Dispute Under the FLSA

Considering the above factors, the Court should approve the proffered settlement of these

FLSA claims according to its terms.

(1)  The settlement was not obtained by fraud or collusion.  Rather, the parties agreed to the principal terms in an arms-length transaction after weeks of negotiation.  Lesser Dec. ¶¶ 12-16. Moreover, the parties' respective counsel finalized the remaining details and wording of the settlement agreement only after weeks of substantial negotiation and exchanging multiple drafts of the agreement.  *Id.* ¶ 16.

(2)  The settlement is in the best interests of the Plaintiffs, in light of the complexity, expense, risks and duration of further litigation of this bona fide dispute under the FLSA.  Plaintiffs claim that Taco Bell misclassified them as exempt from overtime under the FLSA.  They claim the actual duties they performed as AGMs were primarily manual and non-managerial and they spent the majority of their time performing manual tasks.  *Id.* ¶ 12.  Taco Bell, however, asserts that it properly classified AGMs, including Named Plaintiff Tyler and each Settlement Class Member, as exempt in every workweek he or she satisfied the executive exemption under 29 U.S.C. §213(a)(1).  *Id.* ¶ 13.  If Plaintiffs' allegations were ultimately adjudged to be correct, Defendants would be faced with the possibility of a significant monetary verdict in favor of Plaintiffs, as well as an obligation to pay litigation fees and costs incurred by Plaintiffs and Defendants alike.  If Defendants' arguments were adjudged to be correct, Plaintiffs would face the possibility of no recovery of any kind, and possibly having to pay Taco Bell its recoverable costs.

Continued litigation and trial over application of the exemption to the Settlement Class Members is not guaranteed to result in a favorable result to one party or the other.  As used in §213(a) "executive" means any employee (1) compensated on a salary basis at a rate not less than $455 per week, (2) whose primary duty is management of the enterprise or a customarily recognized department or subdivision thereof, (3) who customarily and regularly directs the work

of two or more other employees, and (4) has authority to hire or fire or whose suggestions and recommendations as to hiring, firing, advancement, promotion or other change of status are given particular weight. 29 C.F.R. §541.100(a). The Department of Labor's ("DOL") regulations defining this exemption further state that "management" generally includes, but is not limited to

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. §541.102. These must be the employee's "primary duty," defined as the "principal, main, major or most important duty that the employee performs." This determination

> must be based on all the facts …, with the major emphasis on the character of the employee's job as a whole. Factors to consider include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. §541.700(a). Concurrent performance of non-exempt duties, even more than 50% of the time, however, does not necessarily abrogate an employee's exemption. As the DOL's regulations direct

> [c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of §541.100 are otherwise met. Whether an employee meets the requirements of §541.100 when the employee performs concurrent duties **is determined on a case-by-case basis** and based on the factors set forth in §541.700.

7

29 C.F.R. §541.106(a) (emphasis added). The regulations further caution, "[t]ime alone … is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. §541.700(b). The regulations then use the example of assistant managers who spend more than 50 percent of the time running a register:

> Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, order merchandise, managing the budget and authorizing payment of bills may have management as their primary duty **even if the assistant managers spend more than 50 percent of the time performing nonexempt work** such as running the cash register.

29 C.F.R. §541.700(c) (emphasis added).

Whether Taco Bell properly classified all AGMs as exempt, therefore, is a fact-intensive determination. Application of the exemption requires a *weekly* analysis of hours worked by each AGM and then a review of the actual duties performed. As demonstrated in the regulations cited above, these are inherently complex inquiries. Indeed, after reviewing the actual duties performed and the relative importance of those duties performed, some courts have found that assistant managers satisfy the exemption, *see, e.g., Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) ("It is clear that the restaurants could not operate successfully unless the managerial functions of Assistant Managers, such as ... scheduling employees, keeping track of inventory, and assigning employees to particular jobs, were performed. For that reason, as well as the fact that much of the oversight of the operation can be carried out simultaneously with the performance of non-exempt work, we believe the principal or most important work of these employees is managerial."); others have reached the opposite conclusion, *see, e.g., Stillman v. Staples, Inc.*, Civil Action No. 07-849 (KSH), 2009 U.S. Dist. LEXIS 42247 (D.N.J. May 11, 2009) (decision

by then Magistrate Judge and now-Third Circuit Judge Patty Shwartz upholding plaintiffs' verdict in assistant managerial misclassification collective action). Finally, courts in the Sixth Circuit have recognized the fact-intensive nature of the FLSA's exemptions. *See, e.g.*, *Foster v. Nationwide Mut. Ins. Co.*, 695 F. Supp. 2d 748, 755 (S.D. Ohio 2010) ("The evaluation of an employee's primary duty is a fact-intensive inquiry that is to be based on the 'character of the employee's job as a whole.") (quoting 29 C.F.R. § 541.700(a)).

As the Court has ruled in denying summary judgment, significant factual disputes exists as to Tyler's actual duties and authority and the weight given to her recommendations. (Dkt. No. 74.) Similarly, the actual duties performed, and the authority exercised by, of each of the other Settlement Class Members are subject to being litigated, resulting in further, protracted litigation. A bona fide dispute as to exempt status of each Settlement Class Member exists. Continued pursuit and defense of Plaintiffs' claims will result in protracted litigation over class certification issues as well as the substantive merits of the FLSA claims at issue and extensive appellate practice that could result in remand and further proceedings before this Court on one or more issues. Lesser Dec. ¶ 14. The settlement resolves ongoing litigation, as well as potential appeals, over whether the conditionally certified collective action class should be limited to the stores in which Named Plaintiff Tyler worked or certified on a nationwide basis on the one hand, and whether the conditionally certified collective action class should be decertified and the case proceed solely on Tyler's individual claim on the other.

Moreover, whether any Settlement Class Member is entitled to extend the limitations period for her claim is also a disputed issue. *Id.* ¶ 12. Application of equitable tolling could extend the statute of limitations, and the period for potential recovery, if liability is found. In the absence

9

of equitable tolling, however, recovery by one or more Settlement Class Members may be barred completely.

(3) The named Plaintiff has been deposed. *Id.* ¶ 7. Initial 30(b)(6) depositions of Defendants have been taken. Written discovery and depositions of the three additional opt-in plaintiffs directed toward the actual duties he or she performed, the time spent in each of those duties, and the number hours he or she actually worked, as well as discovery and production of timekeeping and other records related to their employment with Taco Bell, however, remain to be completed – all of which will be expensive and time consuming.

(4) Each Settlement Class Member, while confident in the facts and their legal position, recognizes that for a variety of reasons, some on the merits and some not on the merits, he or she may not prevail at all or may recover substantially less than he or she is seeking. Likewise, Taco Bell, while confident in the facts and its legal positions, recognizes that it could prevail on some issues or not at all and that a loss on one or more issues increases its exposure to payment of additional attorney fees (of unknown amounts) under the FLSA. Resolution of all claims at this time brings certainty to the process for all parties.

(5) During the course of settlement negotiations, Taco Bell provided information on each Settlement Class Member's salary and number of weeks worked during the conditionally certified class period. *Id.* ¶ 15. Each Settlement Class Member's settlement amount is different and based upon the relative number of workweeks in which each person was employed during the operative period. *Id.* ¶ 18. The total net recovery for Plaintiffs of $40,000 represents roughly 70% of the maximum unliquidated damages they would recover at trial, if successful and if the jury credited their testimony about the number of overtime hours worked. *Id.* Moreover, each Plaintiff has signed a settlement agreement informing them of their settlement allocation (subject to court

approval) and counsel's fee request (also subject to court approval). *Id.* ¶ 19.  Finally, the amount requested to be awarded and paid as attorney fees is substantially less than the Plaintiffs' Counsels' lodestar in the proceedings.  *Id.* ¶¶ 20-24.

(6)  Experienced counsel recommended the terms of the settlement to their respective clients and hold the opinion that it is a fair and reasonable resolution of a bona dispute over hours worked and the application of the FLSA's provisions to these individuals.  *Id.* ¶¶ 26-29.  Under these circumstances, a presumption of fairness should attach to the proposed settlement.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court [ ] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

(7)  As an additional consideration, it bears noting that public policy favors settlements. This is particularly true in complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation.  *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.") (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)).

## IV.    CONCLUSION

This collective action settlement was reached as a result of contested litigation and resolves

a bona fide dispute between the parties under the FLSA.  The parties engaged in lengthy investigation of the pertinent facts and law and negotiated for weeks this case before finally reaching settlement.  The parties believe the settlement is fair, reasonable and adequate, and provides Plaintiffs with significant relief in a hotly contested matter.  Accordingly, the parties respectfully request the Court to approve the Collective Action Settlement Agreement attached hereto as Ex. 1.

Dated: March 9, 2017

Respectfully submitted,                                          Respectfully submitted,


/s/ Seth R. Lesser                                                    /s/ Steven W. Likens
Seth R. Lesser                                                          Paul E. Prather (10089)
Fran L. Rudich                                                         Steven W. Likens (13311)
KLAFTER OLSEN & LESSER LLP                          R. Alex Boals (22682)
Two International Drive, Suite 350                        Littler Mendelson, P.C.
Rye Brook, NY 10573                                              3725 Champion Hills Drive
(914) 934-9200 (Tel.)                                               Suite 3000
(914) 934-9220 (Fax)                                              Memphis, Tennessee 38125
frudich@klafterolsen.com                                     Phone: (901) 795-6695
slesser@klafterolsen.com                                     pprather@littler.com
                                                                              slikens@littler.com
**Attorneys for Plaintiff**                                       aboals@littler.com
**and Settlement Class**                                      **Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

The undersigned herby certifies that on March 9, 2017, a true and correct copy of the foregoing JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT was electronically filed with the Clerk of the court using the CM/ECF system which contemporaneously will send an electronic notice of filing to all counsel of record.

/s/ Seth R. Lesser
Seth R. Lesser