# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE,
WESTERN DIVISION

---

**DORIS TYLER**, individually and on behalf
of all other persons similarly situated,

    Plaintiffs,

v.     Case No. 2:15-cv-02084-JPM-cgc

**TACO BELL OF AMERICA, LLC,**
and **TACO BELL CORP.**,

    Defendants.

---

## COLLECTIVE ACTION SETTLEMENT AGREEMENT

---

This Collective Action Settlement Agreement ("**Agreement**") is made this 7th day of March, 2017, by and between Plaintiff Doris Tyler ("**Tyler**") on behalf of herself individually and all Opt-Ins (collectively "**Plaintiffs**") and Taco Bell of America, LLC, and Taco Bell Corp. (collectively "**Taco Bell**"). Taco Bell and Plaintiffs collectively are referred to as the "Parties."

### RECITALS AND BACKGROUND

Whereas, on February 4, 2015, Tyler filed a lawsuit against Taco Bell in the United States District Court for the Western District of Tennessee ("**Court**") captioned *Doris Tyler, Individually and on Behalf of All Other Persons Similarly Situated v. Taco Bell of America, Inc., Taco Bell Corp., and Taco Bell of America, LLC,* Civil Action No. 2:15-cv-02084-JPM-cgc, in which she asserted claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("**FLSA**"), arising out of Taco Bell's alleged misclassification of Assistant General Managers ("**AGMs**") as exempt from overtime and failure to appropriately compensate AGMs for all hours worked over 40 in a workweek ("**Lawsuit**");

Whereas, in the Lawsuit, Tyler sought certification of her claims as a nationwide collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and other current and former employees who worked for Taco Bell as an AGM at company-owned restaurants (except those in the State of California) at any time from February 4, 2012, until December 24, 2014;

Whereas, on May 5, 2015, Tyler filed an Amended Complaint in the Lawsuit that dropped Taco Bell of America, LLC, as a defendant (Dkt. No. 25);

Whereas, the Parties thereafter, engaged in significant discovery and case evaluation relating to Plaintiffs' claims;

Whereas, on September 18, 2015, Tyler filed a Motion for Notice and Conditional Certification and a supporting Memorandum (Dkt. Nos. 41, 42), seeking conditional certification of a nationwide collective action of all persons who worked for Taco Bell as an AGM at company-owned restaurants (except those in the State of California) at any time from February 4, 2012, until December 24, 2014;

Whereas, on May 3, 2016, the Court granted in part and denied in part the Motion for Notice and Conditional Certification (Dkt. No. 81) and conditionally certified a collective action of all persons who were employed by Taco Bell as an AGM at any time from February 4, 2012, until December 24, 2014, at restaurant number 17477 and/or 1618 ("**Collective Action Class**");

Whereas, pursuant to the Court's Order Approving Collective Action Notice (Dkt. No. 91), the deadline for filing consents to join expired September 12, 2016;

Whereas, three (3) individuals (in addition to Tyler) filed consents to join the Lawsuit – Sara Smith, LaShanda Davis, and Sharon Miles ("**Opt-Ins**");

Whereas, the Parties thereafter engaged in protracted settlement negotiations that culminated in this Agreement; and

Whereas, Plaintiffs' Counsel has conducted a thorough investigation of the claims asserted against Taco Bell in the Lawsuit and based on their independent investigation and evaluation, Plaintiffs' Counsel believes that settlement with Taco Bell on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interest of Tyler and Opt-Ins in light of all known facts and circumstances, including the risk of delay, Taco Bell's defenses, and numerous potential certification and appellate issues; and

NOW, THEREFORE, in consideration of the foregoing, the Parties agree:

## ADDITIONAL DEFINITIONS

**Approval Order** refers to the Court's order: (i) exercising jurisdiction over the claims and Parties alleged in the Amended Complaint and the implementation and administration of this Agreement; (ii) granting approval of this Agreement on the terms provided herein (or as the same may be modified by subsequent mutual written agreement of the Parties), adjudicating such terms to be adequate, fair, and reasonable; (iii) appointing Tyler as the Representative Plaintiff who, together with Plaintiffs' Counsel, shall be authorized to act on behalf of herself, Opt-ins, and Final Settlement Collective Action Members with respect to the Lawsuit and this Agreement; (iv) appointing Klafter Olsen & Lesser LLP, as Settlement Administrator; (v) dismissing the Lawsuit on the merits and with prejudice and barring all Final Settlement Collective Action Members from prosecuting Released Claims against Released Persons; and (vi) retaining jurisdiction to enforce this Agreement.

**Class Members** means Tyler and Opt-ins.

**Class Period** means February 4, 2012, until December 24, 2014, inclusive.

**Effective Date** shall mean the later of the following dates:

  (A) if there is no appeal of the Approval Order, the day after the deadline for taking an appeal has passed; or

  (B) if there is an appeal of the Approval Order, the day after all appeals are resolved in favor of the settlement.

  **Individual Settlement Amount(s)** means the portion of the Net Settlement Amount distributable to each Settlement Class Member.

  **Net Settlement Amount** means the remainder of the Total Settlement Amount after deductions for Plaintiffs' Counsel's Fees actually awarded by the Court (with Plaintiff's Counsel's Fees not to exceed $70,000).

  **Plaintiffs' Counsel** means the law firms of Klafter Olsen & Lesser LLP; Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC; and the Donati Law Firm, PLLC.

  **Plaintiffs' Counsel's Fees** means the attorneys' fees that Plaintiffs' Counsel will request from the Court.

  **Released Parties** means Taco Bell (as defined above), along with all past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, joint ventures, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of their past, present, and future officers, directors, members, fiduciaries, insurers, trustees, agents, employees, attorneys, agents, contractors, representatives, benefit plans, divisions, units, branches, and other affiliated parties.

  **Settlement Administrator** means Klafter Olsen & Lesser LLP.

  **Settlement Checks** means the checks issued to each Settlement Class Member for his or her Individual Settlement Amount.

  **Settlement Class Member** means a Class Member who signed this Collective Action Settlement Agreement.

  **Settlement Class Members** means the aggregate group of Class Members who sign this Collective Action Settlement Agreement.

## TERMS OF SETTLEMENT

**1.** **No Admission of Liability or Concession as to the Merits**

  Taco Bell expressly denies any wrongdoing or any violation of state or federal law as alleged in the Lawsuit by it or any Released Party. By entering into this Agreement, Taco Bell does not admit any liability or wrongdoing and expressly denies the same. It is expressly understood and agreed by the Parties that this Agreement is being entered into by Taco Bell solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the claims asserted in the Lawsuit on the terms set forth herein. Nothing in this Agreement, the settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to this

Agreement may be construed or deemed as an admission by Taco Bell or any Released Party of any liability, culpability, negligence, or wrongdoing. This Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce this Agreement.

2.   **Settlement Amount**

(a)   **Total Settlement Amount.** Taco Bell will pay a total of One Hundred Ten Thousand Dollars ($110,000) to settle the Lawsuit to fully and finally resolve the Lawsuit in its entirety ("**Total Settlement Amount**"). The Total Settlement Amount is inclusive of Plaintiffs' Counsel's Fees, administrative costs, interest, back wages, liquidated/statutory damages, and the cost of settlement administration. Finally, the Total Settlement Amount will cover the employee's share of legally required withholdings applicable to back wage payments made to the Settlement Class Members. Taco Bell will pay the employer's share of any payroll taxes on any back wage payments made to the Settlement Class Members.

(b)   **Net Settlement Amount.** As defined above.

(c)   **Attorneys' Fees, Costs, and Expenses.** All Parties will bear their own costs, expenses, and attorneys' fees associated with the Lawsuit except as otherwise expressly provided in this Agreement.

(d)   **Plaintiffs' Counsel's Fees.** In conjunction with the Joint Motion for Approval of the Settlement, Plaintiffs' Counsel shall make, and Taco Bell agrees not to oppose, an application for attorneys' fees and costs that does not exceed seventy thousand dollars ($70,000). Any attorneys' fees and costs awarded in conjunction with the Parties' Settlement shall be paid from the Total Settlement Amount.

(e)   **Settlement Administration.** The Settlement Administrator will be responsible for informing Class Members of this Collective Action Settlement Agreement, identifying the Settlement Class Members, calculating Individual Settlement Amounts, distributing Settlement Checks to Settlement Class Members, and resolving disputes submitted by Settlement Class Members concerning their workweeks. Given the number of Class Members and the absence of a third-party settlement administrator, the costs of settlement administration shall be deemed included in Plaintiffs' Counsel's Fees.

3.   **Collective Action Settlement**

(a)   **No Challenge to Collective Action Class.** Subject to subparagraph (b) of this section, Taco Bell agrees not to challenge, disturb, or otherwise seek modification or decertification of the Collective Action Class. However, Taco Bell does not waive, and instead expressly reserves, the right to challenge the propriety of conditional or class certification for any purpose, as if this Agreement had not been entered into by the Parties, if the Court does not enter an Approval Order or the Effective Date does not occur. The Parties agree that in not challenging, disturbing, or otherwise seeking modification or decertification of the Collective Action Class,

4

Taco Bell is not in any way admitting that class or collective certification is proper in this Lawsuit or any other wage and hour litigation against it or any Released Party.

(b) **Effect of Non-Approval.** In the event that, for any reason, the Court does not enter an Approval Order, the Effective Date does not occur, or this Agreement is otherwise voided pursuant to Paragraph 4 or terminated pursuant to Paragraph 6, the Parties' agreement not to challenge, disturb, or otherwise seek modification or decertification of the Collective Action Class shall be void and of no effect, and shall not be used for any purpose whatsoever in any further proceeding(s) in the Action or in any other lawsuit asserting the same or similar claims and the Parties will be returned to their respective positions *nunc pro tunc* as of November 16, 2016.

4. **Settlement Process**

(a) **Court Approval of Settlement.** Within seven (7) days after this Agreement is executed by the Parties and their counsel, the Parties shall submit this Agreement (including the Settlement Notice attached hereto) to the Court for approval and shall jointly request entry of the Approval Order and entry of judgment dismissing the Lawsuit with prejudice utilizing a mutually-acceptable form of motion (the "Joint Motion"). The Parties agree to use their best efforts to secure an Approval Order from the Court; however, the Parties agree that if the Court does not approve any material term in the Parties' Joint Motion or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, this Agreement may be voided at either Party's option. The Parties further agree that Taco Bell being required to pay any amount greater than the Total Settlement Amount set forth in this Agreement shall be deemed a material change. The Parties further agree that any ruling that the Court may make regarding Plaintiffs' Counsel's motion or petition for an award of attorneys' fees and costs shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount Taco Bell must pay in complete settlement of all claims addressed by this Agreement.

(b) **Individual Settlement Amounts.** Individual Settlement Amounts shall be determined by the Settlement Administrator pro rata based on Class Members' relative weeks worked during the applicable period and applying each Settlement Class Members' ratio to the Net Settlement Amount. The total of all Individual Settlement Amounts made to the Settlement Class Members shall not exceed the Net Settlement Amount. Each Settlement Class Members' Individual Settlement Amount is stated on the respective Settlement Class Members' signature page attached hereto.

(c) **Distribution of Settlement Checks.** Within thirty (30) days after the Effective Date, Taco Bell shall deliver the Settlement Checks to the Settlement Administrator. Within five (5) days of receipt, the Settlement Administrator shall mail the Settlement Checks to the Settlement Class Members.

(d) **Reminder Mailings.** Sixty (60) days after mailing the Settlement Checks, the Settlement Administrator will mail, by first-class U.S. Mail, a reminder to any Settlement Class Member who has not cashed his or her check(s) to cash his or her check(s). If a reminder mailing is returned as undeliverable, the Settlement Administrator shall take reasonable steps to obtain the correct address of the Settlement Class Member for whom the reminder mailing is returned, and shall attempt re-mailings.

(e) **Allocation of Settlement Checks.** The Parties agree that each Settlement Check to be issued to each Settlement Class Member shall be separated into two equal amounts: fifty percent (50%) shall be allocated to the claims asserted in the Lawsuit for unpaid overtime and other wage-related damages ("Wage Portion"), and fifty percent (50%) shall be allocated to the claims asserted in the Lawsuit for liquidated damages and other relief ("Non-wage Portion"). The Wage Portion shall be subject to all required employee paid payroll taxes and deductions and other required deductions. Taco Bell will report the wage portion on an IRS Form W-2. Taco Bell will report the Non-wage Portion on an IRS Form 1099. Taco Bell shall issue separate checks for the Wage Portion and the Non-wage Portion. Other than as set forth above, Taco Bell will not, unless otherwise required by law, make any deductions, withholdings, or additional payments, including, without limitation, medical, or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, contributions to qualified or non-qualified employee benefit plans, or charity withholdings, and entry of the Approval Order by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to a Settlement Class Member shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, or other compensation plan provided by Taco Bell. Contemporaneously with signing this Agreement, each Settlement Class Member will provide an IRS W-4 form with her current information.

(f) **Taxation of Settlement Checks.** Other than the withholding and reporting requirements set forth in Paragraph 4(e), each Settlement Class Member shall be solely responsible for the reporting and payment of his or her employee share of any federal, state, and/or local income or other tax or other withholdings, if any, on the payments made pursuant to this paragraph. Taco Bell makes no representations and it is understood and agreed that Taco Bell has made no representations as to the taxability of any portions of the Settlement Checks, the payment of Plaintiff's Counsel's Fees, or the Named Plaintiff Service Payment. Plaintiffs' and Plaintiffs' Counsel agree that the allocation of the payments from the Total Settlement Amount, including the payment of Plaintiff's Counsel's Fess, and Individual Settlement Amounts, are solely matters between the Plaintiffs and Plaintiffs' Counsel, and Taco Bell has no responsibility or liability related thereto.

(g) **Negotiation of Settlement Checks.** Each Settlement Class Member will have one hundred and eighty (180) days from the date on which the Settlement Checks are mailed to cash his or her Settlement Check, which they will be informed of in the Settlement Notice and on the Settlement Checks. If any Settlement Check is not cashed in that period of time, that Settlement Check will be voided, and a stop-payment will be placed on the check. Any Individual Settlement Check or portions thereof which remain unclaimed for any reason one hundred and eighty (180) days following the mailing of the Settlement Checks shall be deemed unclaimed ("Unclaimed Funds"). Neither Taco Bell, counsel for the Parties, nor the Settlement Administrator shall have any liability for lost or stolen Settlement Checks, for forged signatures on Settlement Checks, or for unauthorized negotiation of Settlement Checks. Without limiting the foregoing, in the event a Settlement Class Member notifies the Settlement Administrator that he or she believes that a Settlement Check has been lost or stolen, the Settlement Administrator shall immediately notify Taco Bell's counsel so that Taco Bell may request its financial institution to stop payment on the check. If the Settlement Check in question has not been negotiated prior to the stop payment order, Taco Bell will issue a replacement check. The Settlement Class Member will have an additional forty-five (45) days from the date of re-mailing to negotiate the re-issued check.

(h)     **Return of Unclaimed Funds.** Should any Settlement Checks be returned to the Settlement Administrator as unclaimed after steps set forth above have been followed, twenty (20) days after the period for negotiating the Settlement Checks has ended, the Settlement Administrator shall return such checks to counsel for Taco Bell.

## 5.     Settlement Class Members' Releases

(a)     Upon the Effective Date, each Settlement Class Member shall be deemed to fully, forever, irrevocably and unconditionally release, acquit, remise, and forever discharge each of the Released Parties from the Released Claims as defined herein.

(b)     Released Claims means any and all past, present, and future wage and hour suits, actions, causes of action, claims, damages, awards, legal, equitable, and administrative relief, interest, rights, or demands that are based upon, related to, or connected with, directly or indirectly, in whole or in part, the allegations, facts, subjects, issues or events that occurred or that are alleged to have occurred that have been asserted in the Lawsuit, including but not limited to claims, rights, and causes of action, whether known or unknown, pursuant to the FLSA and/or any federal, state or other law regulating hours of work, wages, the payment of wages, and/or the payment of overtime compensation based on any act or omission that occurred up to and including the date on which the Court enters an Approval Order; including without limitation statutory, constitutional, contractual, and common law claims for wages, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage and hour claim (including claims for overtime wages or any other wages), any and all claims pursuant to or derived from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, that arise from any alleged failure to pay wages, including any claims for benefits under any benefit plans subject to ERISA that arise from any such alleged failure; and any claims under other federal, state, or other law relating to Taco Bell's alleged failure to pay wages to the Settlement Class Members up to and including the date the Court enters an Approval Order.

(c)     Settlement Class Members are, without limitation, precluded and estopped from bringing in the future any claim or cause of action released in the preceding paragraph.

(d)     Settlement Class Members acknowledge that they are releasing claims that are known and unknown, suspected and unsuspected, and discovered and undiscovered, and are aware that they may hereafter discover legal or equitable claims or remedies presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, including those with respect to the allegations and subject matters in the Lawsuit. Nevertheless, it is the intention of the Settlement Class Members to fully, finally, and forever settle and release all such wage and hour matters, and all claims and causes of action relating to wages and hours which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in the Lawsuit).

(e)     Settlement Class Members understand, acknowledge, and agree that this release is a full and final release applying to both those Released Claims that are currently known, anticipated, or disclosed to any and all Final Settlement Collection Action Members and to all those Released Claims that are presently unknown, unanticipated, or undisclosed to any and all Final Settlement Collection Action Members arising out of the alleged facts, circumstances, and

7

occurrences underlying: (i) the claims set forth in the lawsuit; or (ii) the Released Parties' conduct with respect to the Lawsuit, to the extent such occurrences occur up to and including the date the Court enters an Approval Order.

(f) This Release may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this Release.

(g) The provisions of this Release constitute an essential and material term of this Agreement to be included in the Approval Order entered by the Court.

6. **Termination of Agreement**

(a) **Grounds for Termination.** Any Party may terminate this Agreement if the Court declines to approve this Agreement, the Court's entry of the Approval Order is reversed or substantially modified on appeal, or the settlement as agreed does not become final for any other reason, provided the Parties agree to work cooperatively and in good faith for a period of fourteen (14) days to address and resolve any concerns identified by the Court or a court of appeal in declining to approve this Agreement in the form submitted by the Parties.

(b) **Procedure for Termination.** To terminate this Agreement as specified above, the terminating Party shall give written notice to the other Party no later than ten (10) days after the terminating Party learns that the applicable ground for termination has been satisfied.

(c) **Effect of Termination.** In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Lawsuit is barred by operation of laws, is invalidated, is not approved, or otherwise is ordered not to be carried out by any court: (1) this Agreement shall have no force or effect, and no Party shall be bound by any of its terms; (2) Taco Bell shall have no obligation to make any payments to or on behalf of any Class Member or attorney; (3) any Approval Order and/or Judgment shall be vacated; (4) neither this Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose whatsoever; (5) the Parties agree to cooperate in asking the Court to set a reasonable schedule for the resumption of the Lawsuit; and (6) the Parties reserve all rights, claims, defenses, and appeals that they may have, including but not limited to their rights, claims, defenses, and appeals with respect to Tyler's individual claims, whether the Lawsuit should proceed as a collective action, and the definition of the collective action class.

7. **Media Statements**

(a) The Parties and their respective counsel agree that they will not seek out or encourage media or press attention. In the event that one of the Parties believe a statement has been made that violates the provisions of this section, the Parties' Counsel shall meet and confer informally in an effort to resolve the dispute. If the dispute cannot be resolved informally, such dispute shall be submitted to the Court for resolution. The Court may grant an injunction to cease and desist from making statements that violate this section. The Parties waive any right to appeal or otherwise seek review of the Court's decision.

8

(b) Notwithstanding the foregoing, nothing shall prevent Plaintiffs' Counsel from communicating with Class Members about the settlement or this Agreement, and nothing herein shall prevent Taco Bell from communicating with its employees on any subject.

## 8. Documents and Discovery

Within sixty (60) days after the Effective Date, Plaintiffs' Counsel shall take steps necessary to destroy or erase all documents and data produced by Taco Bell to Plaintiffs' Counsel in connection with the Lawsuit and which are currently in Plaintiffs' Counsel's possession, custody, or control. Plaintiffs' Counsel shall certify to Taco Bell, in writing, their good faith efforts to comply with their obligations under this provision. Further, Plaintiffs' Counsel may and will keep their own work product, filed briefs, and pleadings that may refer to, quote, or incorporate documents and data, as well as any material required by applicable statute and attorney disciplinary and ethical rules.

## 9. Additional Provisions

(a) **Entire Agreement**. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore.

(b) **This Agreement Governs**. To the extent there is any inconsistency between this Agreement and any Notice, this Agreement shall govern and operate to define the rights and obligations of the Parties.

(c) **Commitment to Support and Further Assurances**. The Parties and their respective counsel agree to recommend approval of and support this Agreement to the Court and to undertake their best efforts, including all reasonable steps and efforts contemplated by this Agreement and any other reasonable steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement. In connection with this paragraph, each Party shall take any and all actions, and execute, have acknowledged, and deliver any and all further documents that one or more other Parties may reasonably request to effectuate the intent and purpose of this Agreement.

(d) **Modifications**. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

(e) **Knowing and Voluntary Agreement**. The Parties each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. The Parties further affirm that they have not been coerced, threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that they have in fact consulted with an attorney before signing this Agreement. Plaintiffs' Counsel represent that they have conducted a thorough investigation into the facts of the Lawsuit and have diligently pursued an investigation of the claims asserted on behalf of Tyler and the Class Members.

(f)     **Severability**.  If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

(g)     **Binding Effect on Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

(h)     **Counterparts**.  This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

(i)     **Headings**.  The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

(j)     **Authority of Persons Signing Agreement**.  The individuals executing this Agreement for the Parties and the Parties' Counsels represent and warrant that they do so with full authority to bind each such party to the terms and provisions in this Agreement.

(k)     **No Presumption Against Drafter**.  None of the Parties shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

(l)     **Extensions of Time**.  The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Agreement, subject, if necessary, to approval by the Court.

(m)     **Lawful Right to Release Claims**.  Tyler represents and warrants that she has authority to enter into the releases contained herein and has not pledged, assigned, or transferred any claim, right, or cause of action covered by this Agreement.

(n)     **Notices**.  Any notices issued pursuant to the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

| **Plaintiffs:** | **Taco Bell:** |
|---|---|
| Seth R. Lesser, Esq. | Paul E. Prather, Esq. |
| Klafter Olsen & Lesser LLP | Littler Mendelson, P.C. |
| Two International Drive, Suite 350 | 3725 Champion Hills Drive, Suite 3000 |
| Rye Brook, New York 10573 | Memphis, Tennessee 38125 |
| Phone: 914-934-9200 | Phone: 901-795-6695 |
| seth@klafterolsen.com | pprather@littler.com |

(o)     **Governing Law.**  This Agreement shall be governed by Tennessee law, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States, irrespective of where any action may arise or whether any jurisdiction other than Tennessee has accepted jurisdiction of this matter.  The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of the terms of this Agreement.

(p)     **Court's Continuing Jurisdiction.**  Without altering the finality of any of the Court's orders and judgments, the Court shall retain exclusive jurisdiction over the Parties and the Lawsuit with respect to matters arising out of or connected with the Settlement, and may issue such orders as necessary to implement the terms of the Settlement.

IN WITNESS WHEREOF, the Parties and Plaintiffs' Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

**Plaintiffs' Counsel**

_____
Seth R. Lesser, Esq.
Klafter Olsen & Lesser LLP

Dated: _____February 21_____, 2017

**Taco Bell Corp.**

By: _____
Title: Senior Director
Dated: __3/7__, 2017

**Plaintiff,** individually and on behalf of all other persons similarly situated

_____
Doris Tyler (Feb 23, 2017)
Doris Tyler

Dated: __Feb 23, 2017__, 2017

**Taco Bell of America, LLC**

By: _____
Title: Senior Director
Dated: __3/7__, 2017

12

# INDIVIDUAL SETTLEMENT PAGE
# PLAINTIFF DORIS TYLER

I have read the foregoing Collective Action Settlement Agreement and I accept and agree to the provisions contained in this Agreement, including the releases, and hereby execute it voluntarily and with full understanding of its consequences.

My settlement amount is:

| | |
|---|---|
| My individual settlement amount for back wages **(before applicable withholdings):** | $ 7,631.58 |
| My individual settlement amount for liquidated damages and interest **(not subject to withholdings):** | $ 7,631.58 |
| My total individual settlement amount **(before applicable withholdings)** | $15,263.16 |

**PLEASE READ CAREFULLY.**
**THIS AGREEMENT CONTAINS A RELEASE OF CLAIMS.**

Dated  Feb 28, 2017 , 2017

_Doris Tyler_
Doris Tyler (Feb 28, 2017)
Signature

Doris Tyler
Printed Name

## INDIVIDUAL SETTLEMENT PAGE
## PLAINTIFF SHARON MILES

I have read the foregoing Collective Action Settlement Agreement and I accept and agree to the provisions contained in this Agreement, including the releases, and hereby execute it voluntarily and with full understanding of its consequences.

My settlement amount is:

| | |
|---|---|
| My individual settlement amount for back wages (**before applicable withholdings**): | $2,631.58 |
| My individual settlement amount for liquidated damages and interest (**not subject to withholdings**): | $2,631.58 |
| My total individual settlement amount (**before applicable withholdings**) | $5,263.16 |

**PLEASE READ CAREFULLY.**
**THIS AGREEMENT CONTAINS A RELEASE OF CLAIMS.**

Dated  Feb 23, 2017 , 2017

Signature: *Sharon miles (Feb 23, 2017)*

Printed Name: Sharon miles

## INDIVIDUAL SETTLEMENT PAGE
## PLAINTIFF LASHANDA DAVIS

I have read the foregoing Collective Action Settlement Agreement and I accept and agree to the provisions contained in this Agreement, including the releases, and hereby execute it voluntarily and with full understanding of its consequences.

My settlement amount is:

| | |
|---|---|
| My individual settlement amount for back wages **(before applicable withholdings):** | $ 7,631.58 |
| My individual settlement amount for liquidated damages and interest (**not subject to withholdings**): | $ 7,631.58 |
| My total individual settlement amount **(before applicable withholdings)** | $15,263.16 |

**PLEASE READ CAREFULLY.**
**THIS AGREEMENT CONTAINS A RELEASE OF CLAIMS.**

Dated  2-23 , 2017

_LaShanda Davis_
Signature

_LaShanda Davis_
Printed Name

# INDIVIDUAL SETTLEMENT PAGE
# PLAINTIFF SARA SMITH

I have read the foregoing Collective Action Settlement Agreement and I accept and agree to the provisions contained in this Agreement, including the releases, and hereby execute it voluntarily and with full understanding of its consequences.

My settlement amount is:

| | |
|---|---|
| My individual settlement amount for back wages **(before applicable withholdings):** | $2,105.26 |
| My individual settlement amount for liquidated damages and interest **(not subject to withholdings):** | $2,105.26 |
| My total individual settlement amount **(before applicable withholdings)** | $4,210.52 |

**PLEASE READ CAREFULLY.**
**THIS AGREEMENT CONTAINS A RELEASE OF CLAIMS.**

Dated __February 22__, 2017

_Sara Smith_
Signature

Sara Smith
Printed Name